PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | |
| ) | CASE NO. 4:14CV01379 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** [Resolving ECF Nos. 29 and 30] |

Pending are cross-motions for summary judgment filed by Defendant Allstate Insurance Company (ECF No. 29) and Plaintiff Wells Fargo Bank, N.A. (ECF No. 30). Both motions have been fully briefed. *See* ECF Nos. 31, 33, 34, and 35. For the reasons below, Allstate's motion for summary judgment (ECF No. 29) is granted. Wells Fargo's motion for summary judgment (ECF No. 30) is denied.

**I. BACKGROUND** [1] [2]

---

[1] Wells Fargo informs that Allstate filed its motion for summary judgment without first consulting with Wells Fargo, in writing, as directed by the Court in its Case Management Conference Order (ECF No. 17 at PageID #: 160). ECF No. 31 at PageID #: 510. Allstate retorts that such consultation in this case would have been futile. ECF No. 35 at PageID #: 561. The Court's Order does not provide an exception for parties when they believe submitting a written request for dismissal to opposing counsel would not be fruitful. This failure, while lamentable, does not go to the merits of the motions for summary judgment before the Court. Counsel is, however, cautioned to abide by the Court's orders going forward.

[2] Wells Fargo contends that Allstate should be precluded from relying on the

(continued...)

(4:14CV01379)

The following are the pertinent facts.[3]

Barbara Bailey and her daughter Victoria Gunther were joint tenants of a residence, located in Warren, Ohio. *See* ECF No. 1-3 at PageID #: 79. As of November 2, 2000, the property was titled in the names of Bailey and Gunther. ECF No. 28 at ¶ 5. Bailey purchased homeowners insurance on the property through Allstate. Wells Fargo is the mortgagee on the property.[4] *Id.* at ¶ 2. In 2007, Wells Fargo initiated a complaint in foreclosure on the property against Bailey and Gunther. *Id.* at ¶ 6. On May 3, 2009, Bailey executed a survivorship deed to Gunther for the property. *Id.* at ¶ 7. Later that month, on May 20, 2009, Bailey died. *Id.* at ¶ 8. In 2009, Wells Fargo had knowledge of Bailey's death. *Id.* Wells Fargo continued to pay premiums to Allstate after Bailey's death. *Id.* at ¶ 10. In 2012, Wells Fargo initiated another foreclosure action with respect to the property. *Id.* at ¶ 9.

Unaware of Bailey's death, in February 2013, Allstate issued a renewed "Deluxe Select Value Homeowners Policy" ("Policy") on the property. *See* ECF No. 1-1. The term of the renewed Policy was from April 15, 2013 to April 15, 2014. ECF No. 1 at ¶ 9. The Policy provided up to $100,000.00 in insurance coverage for any sudden and accidental direct physical

---

[2](...continued)
affidavit of third-party witness Attorney Randil Rudloff because it failed to disclose the witness and his affidavit in discovery. *See* ECF No. 29-1. Allstate argues, *inter alia*, that it uses the affidavit "only to qualify documents" and that Attorney Rudloff "attests to nothing substantive." While Attorney Rudloff does not make substantive attestations, counsel for Allstate is again cautioned against skirting the rules. Futher, the documents, not the affidavit transmitting them, matter.

[3] *See also* Stipulation of Facts, ECF No. 28.

[4] Wells Fargo Bank, N.A., d/b/a America's Servicing Company (ASC).

(4:14CV01379)

loss to the subject property.  *Id.* at ¶ 10.  Bailey alone was listed as the named insured on the Policy.  *See* ECF No. 1-1 at PageID #: 15.  On June 25, 2013, a fire loss occurred at the subject property.  ECF No. 28 at ¶ 11.  On October 4, 2013, Wells Fargo purchased the property at a sheriff's sale and a deed was recorded.  *Id.* at ¶ 14.  In November 2013, Wells Fargo made a claim with Allstate for the fire loss.  *Id.* at ¶ 15.  No one, including Wells Fargo, informed Allstate that Bailey had died until after the fire loss had occurred.  *Id.* at ¶ 16.  Allstate denied Wells Fargo's claim on the basis that the Policy had expired on April 15, 2010 following Bailey's death.  ECF No. 1 at ¶ 20.

Wells Fargo filed this lawsuit (ECF No. 1), asserting four claims for relief: breach of contract, declaratory judgment, specific performance, and unjust enrichment.  At issue is whether Allstate properly denied Wells Fargo's insurance claim on the basis that Wells Fargo had knowledge of the name insured's death, but failed to notify Allstate of that fact prior to the fire loss.

## II. STANDARDS

### A.  **Summary Judgment**

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the

(4:14CV01379)

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

(4:14CV01379)

The legal standard applied to cross-motions for summary judgment does not differ from the standard applied when only one party to the litigation files a motion for summary judgment. *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 956, 949 (6th Cir. 2009). Each motion must be evaluated on its own merits, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Appoloni v. U.S.*, 450 F.3d 186, 189 (6th Cir. 2006).

### B. Ohio Insurance Contract Law

The substantive law of Ohio applies, as this case is before the Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). *See Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 436 (6th Cir. 2016) (applying Michigan law in a diversity-of-citizenship case).

The Ohio Court of Appeals' decision in *Allstate Ins. Co. v. Eyster* is instructive when interpreting an insurance contract under Ohio law:

> An insurance policy is a contract, and its interpretation is a matter of law for the court. The coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." Contract terms are to be given their plain and ordinary meaning, and "[w]hen the contract is clear and unambiguous, the court 'may look no further than the four corners of the insurance policy to find the intent of the parties.'"
>
> However, when a portion of an insurance contract is reasonably susceptible of more than one interpretation, it will be strictly construed against the insurer and in favor of the insured. Nevertheless, this rule of insurance-policy interpretation will not be applied in an unreasonable manner.

189 Ohio App.3d 640, 648-49 (Ohio Ct. App. 2010) (citations omitted). The Court interprets the Policy at issue under this rubric.

(4:14CV01379)

## III.  DISCUSSION

Both parties move for summary judgment on Wells Fargo's claims for breach of contract, declaratory judgment, and specific performance.  They do not, however, delineate the claims in their motions and responsive pleadings.  Wells Fargo argues that (1) the Policy was valid at the time of the fire loss; (2) Wells Fargo was not obligated to inform Allstate of Bailey's death, because her death did not constitute a change in ownership; (3) there were no grounds for cancellation of the Policy; and (4) Allstate failed to provide proper notice of cancellation. Allstate argues that (1) the Policy terminated before the fire loss; (2) Wells Fargo was required to inform Allstate of Bailey's death; (3) Wells Fargo's failure to provide notice of Bailey's death constituted grounds for cancellation of the Policy; and (4) Allstate was not required to provide notice of cancellation on these facts.

### A.  **Whether the Policy Was Valid at the Time of the Fire Loss**

Wells Fargo urges that the Policy was valid at the time of the fire loss because Allstate renewed the Policy on February 28, 2013, almost four months before the fire.  ECF No. 30 at PageID #: 483.  Allstate retorts that had Allstate been informed of Bailey's death, the Policy would have automatically terminated at the end of the premium period during which Bailey, the sole insured, died.  ECF No. 29 at PageID #: 256.

#### 1.     **Analogous Case**

In an unreported decision, *Ramsey v. Allstate Ins. Co.*, 416 Fed.App'x. 516 (6th Cir. 2011), the Sixth Circuit decided an insurance contract dispute that involved facts very similar to

6

(4:14CV01379)

those underlying the case at bar.[5]  In *Ramsey*, the named insured on an Allstate homeowners insurance policy died.  *Id.* at 518.  After the named insured died, his son (the plaintiff) inherited the property.  *Id.* at 519.  Bank of America, the mortgagee on the property, continued to pay insurance premiums to Allstate from the named insured's account after the insured's death.  *Id.* at 518.  In turn, Allstate continued to renew the policy in the name of the deceased named insured.  *Id.*  Nearly six (6) years after the named insured's death, a fire loss occurred at the property.  *Id.*  Ultimately, Allstate denied the plaintiff's claim for coverage of the loss, stating that it did not learn of the named insured's death until after the loss had occurred.  *Id.*  The district court granted summary judgment to Allstate.  *Id.*

In its analysis, the Sixth Circuit cited to the following provisions of the insurance policy at issue:

**Policy Transfer**

You may not transfer this policy to another person without our written consent.

**Continued Coverage After Your Death**

If you die, coverage will continue until the end of the premium period for:

1) your legal representative while acting as such, but only with respect to the residence premises and property covered under this policy on the date of your death.

2) an insured person, and any person having proper temporary custody of your property until a legal representative is appointed and qualified.

---

[5]  Neither party drew the Court's attention to this decision. While an unreported decision is not binding, counsel is ethically obligated to disclose decisions rendered by a controlling legal authority that are known to counsel and adverse to the position of the client and not disclosed by opposing counsel.  *See* Ohio R. Prof. Cond. 3.3(a)(2).

7

(4:14CV01379)

*Ramsey*, 416 Fed.App'x. at 518. Based on these provisions, the Sixth Circuit agreed with the district court that "the express insurance contract terminated at the end of the premium period following [the named insured]'s death." *Id.* at 519.

The Sixth Circuit made this ruling in favor of Allstate even though premiums were kept current and Allstate had renewed the policy. *See id.* The Sixth Circuit reversed and remanded the case because the district court had not considered whether Allstate had received constructive notice of the named insured's death in advance of the loss, and whether there was an implied-in-fact contract between Allstate and the plaintiff. *See id.* at 521-22. The case returned to the Circuit after the district court again granted summary judgment to Allstate. *See Ramsey v. Allstate Ins. Co.*, 514 Fed.App'x. 554 (6th Cir. 2013). The Circuit affirmed in part and reversed in part, agreeing that there was no constructive notice, but finding that there may have been an implied-in-fact contract because facts in the record indicated that Allstate may have known of the named insured's death before the fire loss. *Id.* at 558-59.

### 2. Termination of the Policy

In the case at bar, the Policy contains "policy transfer" and "continued coverage after your death" provisions that are identical to those provisions in *Ramsey*. *See* ECF No. 1-1 at PageID #: 44. The rationale used by the Sixth Circuit in *Ramsey* applies to this case as well. The Policy terminated at the end of the premium period for the policy in effect at the time of Bailey's death, *i.e.,* on April 15, 2010. *See* ECF No. 29 at PageID #: 256. The fire loss occurred more than three years after the Policy had terminated. Wells Fargo's argument that it had performed its duties under the Policy by continuing to pay premiums is unavailing. ECF No. 30 at PageID #: 485. In

(4:14CV01379)

*Ramsey*, the mortgagee also continued making premium payments after the death of the named insured. Nevertheless, the Circuit found that Allstate was not required to provide coverage if it had not been made aware of the named insured's death prior to the loss. Moreover, paying premiums is only one requirement under the Policy. Payment alone does not demonstrate that Wells Fargo had performed all of its obligations under the Policy.

Additionally, there is no indication from the facts in the record (and no argument advanced by Wells Fargo) that Allstate had actual or constructive notice of Bailey's death prior to the fire loss. The parties stipulate that "[n]o one, including Wells Fargo, informed Allstate that Barbara Bailey had died until after the fire loss at the subject property." ECF No. 28 at ¶ 16, PageID #: 191. There are also no facts in the record to support a finding of an implied-in-fact contract between Wells Fargo and Allstate. In any case, Allstate could not have entered into such an agreement without first knowing that Bailey had died. *See Ramsey*, 514 Fed.App'x. at 558 (indicating that Allstate's awareness of the named insured's death was prerequisite to finding an implied-in-fact contract under the circumstances).

There is no genuine issue of material fact that the Policy was not valid at the time of the fire loss.

### B. Whether Allstate Had a Right to Cancel the Policy

Assuming the Policy had not terminated before the fire loss, as Wells Fargo suggests, the Court must determine whether Allstate had a right to retroactively cancel the Policy.

9

(4:14CV01379)

1.  **Whether Bailey's Death Constitutes a Change in Ownership**

Allstate asserts that Bailey's death constitutes a "change in ownership," pursuant to the terms of the Policy. ECF No. 33-1 at PageID #: 542. Wells Fargo offers that there was no "change in ownership" upon Bailey's death because Gunther was *an* owner of the property before and after Bailey's death. ECF No. 30 at PageID #: 484-85. Wells Fargo's argument is risible. It cannot reasonably be said that a change in the composition of ownership does not constitute a change in ownership. *See Eyster*, 189 Ohio App.3d at 648-49 (requiring a court to construe an insurance policy by using "the ordinary and commonly understood meaning of the language employed"). Bailey was an owner of the property. After she died, she was no longer an owner of the property. Applying the ordinary and commonly understood meaning of the word "change," the ownership changed when Bailey died, irrespective of whether Gunther retained her interest in the property. *See* Black's Law Dictionary (6th ed. 1990) (defining "change" as "alter" and "make different in some particular").

There is no genuine issue of material fact that the death of Bailey, an owner of the property, constitutes a change in ownership under the Policy.

2.  **Whether Wells Fargo was Required to Inform Allstate of Bailey's Death in Order to Obtain Coverage**

Wells Fargo argues that "[t]here is absolutely no provision in the Policy that directs Wells Fargo to notify Allstate of Bailey's death as a condition precedent to insurance coverage." ECF No. 30 at PageID #: 484. The Policy explicitly states that "[t]he mortgagee will . . . notify us in writing of any change of ownership or occupancy . . . of which the mortgagee has knowledge . . . ." ECF No. 1-1 at PageID #: 58 (emphasis added). Furthermore, the Policy provides that

10


(4:14CV01379)

Allstate will "protect the mortgagee's interest in a covered building structure in the event of . . . a change in ownership . . . *if the mortgagee has no knowledge of these conditions*." *Id.* (emphasis added).

Pursuant to the terms of the Policy, Wells Fargo's interest is protected in the event of change in ownership if it does not have knowledge of the change in ownership. ECF No. 29 at PageID #256. As explained above, Bailey's death clearly constituted a change in ownership. Wells Fargo admits that it was aware of Bailey's death years before the fire loss and did not inform Allstate. *See* ECF No. 28 at ¶¶ 8 and 16, PageID #: 190-91. Wells Fargo failed to satisfy its obligation under the Policy, and should not now benefit from its dereliction.

There is no genuine issue of material fact that Wells Fargo was required to notify Allstate of Bailey's death, in order to protect its interest as the mortgagee and maintain coverage.

### 3. Whether Wells Fargo's Failure to Inform Allstate of Bailey's Death Constitutes Grounds for Cancellation

According to Wells Fargo, Allstate had no right to retroactively cancel the Policy because the requirements for cancellation under the Policy were not met and Allstate continued to renew the policy without inquiring about Bailey's state of being. ECF No. 30 at PageID #: 483-84. The Policy provides the following regarding Allstate's right to cancel:

> When this policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:
> 1) non-payment of premium;
> 2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
> 3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
> 4) there has been substantial change or increase in hazard in the risk we originally accepted.

(4:14CV01379)

ECF No. 1-1 at PageID #: 44-45.

Wells Fargo argues that it was not "on notice that Ms. Bailey's death was a 'substantial change or increase in risk' or was somehow a 'material fact' that affected the Policy." ECF No. 30 at PageID #: 485-86.  What constitutes a "material misrepresentation, fraud or concealment of material facts in presenting a claim" or a "substantial change or increase in hazard in the risk" is ambiguous, Wells Fargo contends.  Id.  Furthermore, Wells Fargo suggests that "[b]ecause Gunther and Wells Fargo were, at all times, intended insured parties under the Policy, Bailey's death caused no material change or increase in risk to Allstate."  ECF No. 31 at PageID #: 508.

Again, Wells Fargo promotes an argument that is hard to take seriously.  That Wells Fargo did not know failing to disclose the death of the sole named insured on an insurance policy would constitute a "material misrepresentation" or a "concealment of material facts" strains credulity.  Equally difficult to fathom is Wells Fargo's argument that it did not know Bailey's death constituted a "substantial change" in the risk Allstate initially accepted, when Bailey's death meant that the sole person with whom Allstate had entered into the insurance contract was no longer alive.  Any ambiguity that can be found in these provisions of the Policy has no application under the facts of this case.

The Court finds irrelevant Wells Fargo's argument that Allstate never inquired about Bailey when renewing the Policy, "suggesting that her status was completely immaterial." ECF No. 30 at PageID #: 484.  As explained above, the Policy placed the onus on Wells Fargo to report Bailey's death.  Furthermore, as the Sixth Circuit found in *Ramsey*, Ohio law does not

(4:14CV01379)

require an insurer to investigate the life or death status of its insured, even when renewing a policy. *See* 514 Fed.App'x. 554 at 557. Specifically, the Circuit stated:

> [Plaintiff] points to no case or law that imposes upon an insurance company constructive notice of the death of one of its insureds upon publication of a death notice. . . . [S]uch a hypothetical rule would require Allstate to comb public records every day and compare death notices and estates in probate to its list of policyholders to protect itself in circumstances similar to those here.

*Id.* Allstate was not required to confirm that Bailey was still alive before renewing the Policy.

There is no genuine issue of material fact that Allstate had a right to retroactively cancel the Policy.

### C. Whether Allstate Was Required to Provide Notice Before Cancellation

Wells Fargo argues that Allstate's failure to give notice of cancellation in accordance with the terms of the Policy constitutes breach of contract. *See* ECF No. 30 at PageID # 479-80. In pertinent part, the Policy states:

> If the cancellation is for non-payment of premium, we will give you at least 10 days notice. If the cancellation is for any other reasons, we will give you at least 30 days notice.

ECF No. 1-1 at PageID #: 44-45.

There is no evidence that Allstate was aware of the named insured's death until after the fire loss occurred. As indicated above, the parties stipulated that no one, including Wells Fargo, informed Allstate of the death until after the fire loss. *See* ECF No. 28 at PageID #: 191. It would be unreasonable (and inequitable) to construe the Policy as requiring Allstate to provide notice in advance of cancellation, when the mortgagee withheld material facts until after grounds for cancellation and a loss had occurred. *See Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d

13

(4:14CV01379)

234, 236 (2015) ("The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect.") (citation omitted).

There is no genuine issue of material fact, under the circumstances presented in this case, that Allstate was *not* required to give notice of cancellation in accordance with the terms of the Policy. Stated differently, Allstate was deprived of the opportunity to give notice in accordance with the Policy when Wells Fargo withheld timely notice of Bailey's demise.

### IV. Conclusion

For the foregoing reasons, Allstate's motion for summary judgment (ECF No. 29) is granted; Wells Fargo's motion for summary judgment (ECF No. 30) is denied.

The sole remaining claim is Wells Fargo's claim for unjust enrichment. The parties are hereby on notice that the Court questions the viability and breadth of this claim. Not later than 10 (ten) days from the date of this Order, Wells Fargo shall file a notice advising the Court of its expectations regarding its claim for unjust enrichment. Not later than 7 (seven) days from the date of Wells Fargo's notice, Allstate shall file a reply.

IT IS SO ORDERED.

 March 28, 2016   /s/ Benita Y. Pearson
 Date    Benita Y. Pearson
    United States District Judge